## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **KRAUSS-MAFFEI CORPORATION,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No. |
| | ) |
| | ) |
| **KLAUS LEPP,** | ) |
| **MARCELA VELEZ LEPP, and** | ) |
| **THE PLAST PRO'S, LLC** | ) |
| | ) |
| *Defendants.* | ) |

### VERIFIED COMPLAINT

Now comes Krauss-Maffei Corporation ("Krauss-Maffei"), by and through counsel, and for its Verified Complaint against Klaus Lepp ("Mr. Lepp"), Marcela Velez Lepp ("Mrs. Lepp"), and The Plast Pro's, LLC ("Plast Pro's") alleges and states as follows:

### PARTY IDENTIFICATION AND JURISDICTION

1. Plaintiff Krauss-Maffei is a corporation organized and existing under the laws of the state of Delaware with a principal place of business in Kentucky.

2. Defendant Mr. Lepp is an adult citizen and domiciliary of the state of Florida, last known to reside at 3931 Pompano Dr. SE, St. Petersburg, FL 33705.  Mr. Lepp was formerly an employee of Krauss-Maffei until the termination of his employment on August 13, 2022.

3. Defendant Mrs. Lepp is Mr. Lepp's wife.  Mrs. Lepp was listed as the sole owner and operator of The Plast Pro's, LLC, a company that directly competes with Krauss-Maffei using Krauss-Maffei's misappropriated intellectual property obtained from Mr. Lepp.

4. Defendant Plast Pro's LLC is a Florida-based limited liability company.

5. This Court has subject matter jurisdiction over the claims in this case because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

1

6. This Court has specific personal jurisdiction over Defendant Mr. Lepp because Mr. Lepp deliberately availed himself of the state of Kentucky by contracting with a company with a United States principal place of business in Kentucky.

7. This Court has specific personal jurisdiction over all Defendants because each Defendant has directed tortious acts at Krauss-Maffei, a resident of Kentucky.

8. Venue is proper in this Court because, among other reasons, a substantial part of the events or omissions giving rise to Krauss-Maffei's claims occurred in this judicial district.

## BACKGROUND

9. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

10. Krauss-Maffei is one of the world's leading manufacturers of machines and systems for producing and processing plastics and rubber.

11. In connection with its business, Krauss-Maffei has expended significant time, money, and effort to develop and maintain its product development techniques and formulas, pricing methodologies, marketing and development plans, customer relationships, and corporate goodwill to provide cost-effective, reliable, and sustainable products and client service to its customers.

12. Krauss-Maffei has also expended significant resources to train and develop its employees, including in particular Mr. Lepp, in business development, marketing, and sales to grow Krauss-Maffei's business and customer bases.

13. Throughout the course of its business, Krauss-Maffei has expended significant resources and effort to develop proprietary, trade secret information and has taken proactive measures to maintain the secrecy of its employee and client information. Access to this information, which is not known generally known to the public, is restricted and it is maintained

in secure data systems. Such information, if obtained, could be used by a competitor to steal Krauss-Maffei's development techniques and formulas, business advantages, plans, and customers, and to engage in unfair competition against Krauss-Maffei.

14. In order to protect its confidential information, Krauss-Maffei requires employees with access to that information to execute employment agreements containing a promise not to transmit confidential information to any entity outside Krauss-Maffei without the explicit permission of Krauss-Maffei. Mr. Lepp executed this Agreement on July 1, 2012, and a true and correct copy of that Agreement has been attached to this Verified Complaint as Exhibit A.

15. In 2012, Mr. Lepp was promoted to the position of General Manager, Southern Region, for the Injection Molding Division. In this role, Mr. Lepp promoted all Krauss-Maffei capital equipment products and services to his designated markets; had direct oversight over all sales personnel and their activities within his region; and was responsible for developing sales strategy for his territory in a manner that aligned with company-wide targets and global strategies. Mr. Lepp reported directly to the Company president.

16. In total, the injection molding division region that Mr. Lepp managed while at Krauss-Maffei generated significant revenue for Krauss-Maffei per year.

17. By the very nature of his high-level executive position, Mr. Lepp had unique access to Krauss-Maffei's trade secrets, confidential information, and proprietary information.

**DEFENDANTS COORDINATE TO MISAPPROPRIATE KRAUSS-MAFFEI'S CONFIDENTIAL INFORMATION FOR PLAST PRO'S**

18. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

19. While Mr. Lepp was still employed by Krauss-Maffei, he and Mrs. Lepp devised a plan to steal Krauss-Maffei's trade secrets and confidential information to their mutual benefit.

20. Defendant The Plast Pro's LLC is a Florida-based Limited Liability Company that was formally incorporated on March 28, 2018. (*See* Exhibit B).

21. According to the Florida Secretary of State's website, the registered agent for Plast Pro's is Mrs. Lepp. (*Id.*).

22. Upon information and belief, Mrs. Lepp has no relevant background or knowledge in the plastics and rubber manufacturing industry.

23. According to Florida Secretary of State's website, the principal address for Plast Pro's is 3931 Pompano Dr. SE, St. Petersburg, FL 33705, the same address as listed for Mrs. Lepp as well as the last known address for Mr. Lepp. (*Id.*).

24. Upon information and belief, Defendants formed Plast Pro's to directly and unfairly compete with Krauss-Maffei in the plastics and rubber manufacturing industry, as further described below. Plast Pro's is unfairly competing for the same business and the same clients as Krauss-Maffei.

25. Krauss-Maffei has learned that after Plast Pro's was formed, Mr. Lepp surreptitiously began sending Krauss-Maffei's confidential information to Plast Pro's without seeking or obtaining permission from Krauss-Maffei.

26. Specifically, on multiple occasions, Mr. Lepp deceived company personnel with access to confidential manufacturing drawings to send him a copy of that information under false pretense, then used his Krauss-Maffei email address to send emails containing Krauss-Maffei's confidential information, including those confidential manufacturing drawings, to Plast Pro's at the email address plastprosllc2@outlook.com. True and correct copies and examples of those emails are collectively attached as Exhibit C.

27. Mr. Lepp also regularly sent confidential information belonging to Krauss-Maffei, including confidential manufacturing drawings used to manufacture Krauss-Maffei's products that he obtained by deceiving employees with access into providing, from his work email to the email account k.lepp@outlook.com. True and correct copies and examples of those emails are collectively attached as Exhibit D.

28. Plast Pro's has used the confidential information belonging to Krauss-Maffei and provided by Mr. Lepp to unfairly compete with Krauss-Maffei by manufacturing products functionally identical to Krauss-Maffei's products and selling them to Krauss-Maffei's customers. Upon information and belief, Plast Pro's has used one or more Krauss-Maffei suppliers to manufacture the Plast Pro's products.

### MR. LEPP'S UNAUTHORIZED USE OF KRAUSS-MAFFEI BRANDING AND TRADEMARKS TO DEFRAUD CUSTOMERS

29. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

30. In his role as General Manager, Southern Region, Injection Molding Division, Mr. Lepp was responsible for making direct sales to Krauss-Maffei clients.

31. Krauss-Maffei has learned that on multiple occasions from 2018–2022, Mr. Lepp defrauded Krauss-Maffei's clients by using Krauss-Maffei's branding and trademarks (as well as his status as a Krauss-Maffei employee) to make clients believe they were buying Krauss-Maffei products, but in fact Mr. Lepp was having those products manufactured by a third party using Krauss-Maffei's confidential information, selling those products to Krauss-Maffei's clients, and keeping all profit for himself. (*See* Exhibit E, Plast Pro's Aug. 22, 2022 invoice listing sales for "Kraus Maffei" barrels). Upon information and belief, the Plast Pro's products have proven to be of inferior quality, causing damage to Krauss-Maffei's reputation due to clients mistakenly believing they are Krauss-Maffei products.

32. Mr. Lepp did not inform Krauss-Maffei at any point that he was using the company's branding and trademarks to deceive Krauss-Maffei's customers so they would be unaware that products they were buying directly from him were not in fact manufactured or sold by Krauss-Maffei.

33. Krauss-Maffei did not at any point give Mr. Lepp permission to use Krauss-Maffei's trademarks and branding to sell products manufactured by a third party for his personal profit.

### MR. LEPP IS TERMINATED AND DENIES ANY WRONGDOING DESPITE OVERWHELMING EVIDENCE TO THE CONTRARY

34. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

35. Krauss-Maffei just recently discovered Mr. Lepp's multiyear campaign to steal its confidential information and to sell its customers his own products using Krauss-Maffei's branding and intellectual property, and accordingly terminated his employment effective August 13, 2022.

36. Krauss-Maffei sent Mr. Lepp a letter on August 22, 2022, a true and correct copy of which is attached hereto as Exhibit F, demanding that Mr. Lepp immediately cease and desist from using or disclosing Krauss-Maffei's confidential information, return all confidential information in his possession belonging to Krauss-Maffei, and cease and desist from using Krauss-Maffei's branding/trademarks without permission. (*See* Exhibit F).

37. The day that Krauss-Maffei sent its cease and desist letter, August 22, 2022, Plast Pro's registration as an active Florida limited liability company was cancelled. Upon information and belief, it was Mr. Lepp and/or Mrs. Lepp who took such action in an attempt to cover their tracks. (*See* Exhibit B).

38.  Mr. Lepp responded to Krauss-Maffei's August 22, 2022 letter through counsel on August 29, 2022, claiming that he had never misappropriated Krauss-Maffei's confidential information and no longer possessed any copies of that information. (*See* Exhibit G).

39.  Mr. Lepp did not acknowledge his multiple deliveries of confidential information to Plast Pro's email address in his response letter.

40.  Mr. Lepp's response letter did not acknowledge his misappropriation of Krauss-Maffei's branding and trademarks to falsely induce Krauss-Maffei customers into buying products from him directly.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
### (Against All Defendants)

41.  Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

42.  Krauss-Maffei's confidential and proprietary information, as described above, constitutes trade secrets under KRS § 365.880, et seq. and the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

43.  By acquiring, disclosing, and/or using this confidential and proprietary information, Defendants have improperly misappropriated Krauss-Maffei's trade secrets, including product specifications and information about its pricing strategies, marketing plans, development plans, and strategies for sustainable product offerings.

44.  Defendants have willfully and maliciously misappropriated Krauss-Maffei's trade secrets and have utilized those trade secrets with the specific intent to contact, solicit, divert, and/or take away Krauss-Maffei's employees, customers, business and/or goodwill.

45.  As a result of Defendants' misappropriation, Krauss-Maffei has been and will continue to be irreparably harmed.

46. Upon information and belief, Krauss-Maffei has been damaged, but its remedy at law by itself is inadequate. Therefore, Krauss-Maffei also seeks temporary, preliminary, and permanent injunctive relief against Defendants.

## COUNT II
## BREACH OF FIDUCIARY DUTY AND EMPLOYEE DUTY OF LOYALTY
### (Against Mr. Lepp Only)

47. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

48. As an employee of Krauss-Maffei, Mr. Lepp had a fiduciary duty to Krauss-Maffei and owed the Company a duty of loyalty. Mr. Lepp also was required to refrain from interfering with Krauss-Maffei's legitimate business interests, misappropriating Krauss-Maffei's confidential and proprietary trade secrets and business information, usurping for himself sales opportunities that he learned about in his capacity as General Manager, Southern Region, Injection Molding Division, and from unfairly competing with Krauss-Maffei.

49. Mr. Lepp breached his fiduciary duties and duty of loyalty to Krauss-Maffei, including, but not limited to, by starting a directly competing business while still employed with Krauss-Maffei and using Krauss-Maffei's product specifications to create products for his new business, Plast Pro's.

50. Mr. Lepp also breached his fiduciary duties and duty of loyalty to Krauss-Maffei by using Krauss-Maffei's intellectual property, to serve Krauss-Maffei's clients and keeping revenue from those services for himself, and using Krauss-Maffei's client list, contract information, and pricing data to solicit customers away from Krauss-Maffei and to Plast Pro's.

51. As a result of Mr. Lepp's breaches, Krauss-Maffei has been and will continue to be irreparably harmed.

52. Krauss-Maffei has suffered damages as a result of Mr. Lepp's conduct in excess of $75,000, the exact amount of which to be determined at trial. Further, due to Mr. Lepp's breaches, Krauss-Maffei is entitled to disgorgement of some or all of the pay it provided to Mr. Lepp during his employment with Krauss-Maffei as to any period of disloyalty to Krauss-Maffei.

## COUNT III
## FRAUD
## (Against Mr. Lepp Only)

53. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

54. An action for fraud requires a plaintiff to establish six elements by clear and convincing evidence: (1) a material representation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

55. Fraud may be committed either by intentionally asserting false information or by willfully failing to disclose the truth. *Id.* at 469.

56. Mr. Lepp had a duty to disclose the truth in his representations, including, but not limited to, that products he sold to Krauss-Maffei customers on behalf of Plast Pro's, while claiming they were made by Krauss-Maffei, were in fact not made by Krauss-Maffei but were made without Krauss-Maffei's knowledge using misappropriated intellectual property belonging to Krauss-Maffei.

57. Mr. Lepp falsely represented to Krauss-Maffei customers on multiple occasions that certain products they ordered through him directly were in fact products made by Krauss-Maffei. These statements and representations were false.

58. The intent of Mr. Lepp to misrepresent and make such false statements and representations was to induce Krauss-Maffei's customers to rely upon them and purchase products directly from him so that he could keep all profit from such sales.

59. Mr. Lepp's fraudulent statements were made to Krauss-Maffei's detriment, as Krauss-Maffei was denied the revenue from sales of products that customers would otherwise have bought from Krauss-Maffei.

60. Krauss-Maffei would not have been deprived of the revenue from those product sales had Mr. Lepp not made his fraudulent statements.

61. Mr. Lepp also falsely represented to employees of Krauss-Maffei that he needed certain product specifications, to which he did not otherwise have access, for his work for Krauss-Maffei, when in fact he was obtaining the product specifications under false pretenses, intending to use them for Plast Pro's.

62. Krauss-Maffei, by and through certain of its employees, were induced to rely and did rely on Mr. Lepp's false representations, to the detriment of Krauss-Maffei. This resulted in Mr. Lepp gaining prohibited access to product specifications.

63. As a result, Krauss-Maffei has suffered and continues to suffer damages.

64. Mr. Lepp's actions were willful, wanton, and made with reckless disregard for the rights of Krauss-Maffei, thereby entitling the Company to punitive damages.

**COUNT IV**
**VIOLATION OF THE LANHAM ACT**
**(Against Mr. Lepp Only)**

65. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

66. Krauss-Maffei has the exclusive rights to use and exploit its Image Rights which serve as distinctive trademarks within the meaning of Section 43 of the Lanham Act, 15 U.S.C. §

1125, and which are used as trademarks in interstate commerce for Krauss-Maffei's professional products and services and identify Krauss-Maffei as the exclusive source of services offered thereunder (the "Marks").

67. The Marks have been in use for many years and play a prominent role with respect to the marketing and advertising of Krauss-Maffei's products and services. The Marks have gained widespread recognition in the worldwide plastics industry, including, but not limited to recognition in Kentucky.

68. The Marks were distinctive and well-known long before Mr. Lepp began using unauthorized reproductions of the Marks to fraudulently sell products that were not actually manufactured by Krauss-Maffei for his own personal gain.

69. Mr. Lepp has infringed these rights by using the Marks in connection with his own personal sales of products created using Krauss-Maffei's misappropriated intellectual property to Krauss-Maffei's customers. Mr. Lepp has done so without the permission of Krauss-Maffei.

70. Mr. Lepp's acts constitute trademark infringement, false designation of origin, false or misleading representation, false advertising, and false or misleading description which: (a) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Mr. Lepp with Krauss-Maffei and as to the origin, sponsorship, or approval of Mr. Lepp's products, services, and commercial activities by Krauss-Maffei; and (b) in commercial advertising or promotion, misrepresent the nature, characteristics, qualities, or origin of Krauss-Maffei's products, services, or commercial activities and/or Krauss-Maffei's authorized products, services, or commercial activities.

71. Mr. Lepp's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As a result of Mr. Lepp's unlawful acts, Mr. Lepp has been unjustly enriched and Krauss-Maffei has been damaged.

72. Mr. Lepp's unlawful activities have caused, and unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Krauss-Maffei in terms of its business, reputation, and goodwill in the Marks. Krauss-Maffei is damaged and believes it will continue to be damaged by Mr. Lepp's false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with the Marks. Mr. Lepp's acts also negatively impact Krauss-Maffei's standing and reputation in the industry by associating the company with Mr. Lepp's inferior brand equity. Krauss-Maffei has no adequate remedy at law.

73. Krauss-Maffei seeks injunctive relief, compensatory damages, disgorgement of profits, punitive damages, and recovery of its costs and attorney's fees against Mr. Lepp for his various and continuing acts of infringement, false affiliation, false designation of origin, false advertising, and unfair competition.

## COUNT V
## CONVERSION
## (Against All Defendants)

74. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

75. Krauss-Maffei was and is the legal owner of the product specifications that Defendants, through Mr. Lepp, wrongfully and unlawfully obtained from Krauss-Maffei.

76. At the time Defendants, through Mr. Lepp, wrongfully and unlawfully obtained the product specifications belonging to Krauss-Maffei, Krauss-Maffei had the exclusive right to possess them.

DocuSign Envelope ID: E3BE6FB2-1F70-4E75-BF99-6452F1626BD7
Case: 2:22-cv-00117-DLB-EBA  Doc #: 1  Filed: 09/28/22  Page: 13 of 15 - Page ID#: 13

77. Defendants exercised dominion over the product specifications in a way that deprived Krauss-Maffei from its exclusive use and enjoyment of them.

78. Defendants used the product specifications for their own benefit.

79. Defendants intended to interfere with Krauss-Maffei's exclusive possession of the product specifications.

80. Krauss-Maffei has demanded the return of the product specifications – and all other Krauss-Maffei property that Defendants may have – but Defendants, through Mr. Lepp, have refused.

81. Krauss-Maffei suffered damages from the loss of the exclusive right of possession of the product specifications, because Defendants have used them to make their own products that they are selling and marketing to unfairly compete with Krauss-Maffei.

## COUNT VI
## INJUNCTIVE RELIEF
## (Against All Defendants)

82. Krauss-Maffei incorporates the preceding allegations as if fully rewritten here.

83. Unless enjoined, Defendants' wrongful and unlawful conduct will continue.

84. Unless enjoined, Defendants' conduct will cause immediate and irreparable harm to Krauss-Maffei.

85. Krauss-Maffei is likely to succeed on the merits of this action.

86. Krauss-Maffei has no adequate remedy at law because not all of the harm it has suffered, is suffering, and will continue to suffer can be definitely determined and reduced to damages. Nor will damages related to certain wrongful and unlawful conduct prevent further such conduct that is ongoing and/or that may occur in the future.

87. The granting of injunctive relief is necessary and will not harm third parties. Injunctive relief also furthers the public interest in preventing unfair competition and protecting businesses' confidential information, proprietary information, and trade secrets.

88. The balance of the equities strongly favors issuance of the requested injunctive relief in Krauss-Maffei's favor against Defendants.

WHEREFORE, Krauss-Maffei prays for the following relief:

A. Temporary, preliminary, and permanent injunctive relief, including a temporary restraining order in the form requested in Krauss-Maffei's Motion and a preliminary injunction, against all Defendants;

B. Judgment against Defendants for compensatory damages, punitive damages, costs, and attorney's fees; and

C. Such other relief as the Court deems appropriate.

                    Respectfully submitted,

                    <u>s/Michael B. Mattingly</u>
                    Michael B. Mattingly
                    Matthew J. Bakota
                    S. Joseph Stephens
                    DINSMORE & SHOHL LLP
                    255 East Fifth Street, Suite 1900
                    Cincinnati, OH  45202
                    Phone: 513 977 8200
                    Email: Michael.mattingly@dinsmore.com
                            Matthew.bakota@dinsmore.com
                            Joseph.stephens@dinsmore.com

                    *Counsel for Plaintiff Krauss-Maffei*

## **VERIFIED DECLARATION**

I, Nolan Strall, President of the Krauss-Maffei Corporation, declare under penalty of perjury that I have reviewed the facts in this Complaint and verify that they are true and accurate to the best of my knowledge, information, and belief.

DocuSigned by:

*Nolan Strall*
907B9F4D23F847C...

Nolan Strall