**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

CIVIL ACTION NO. 22-117-DLB-EBA

KRAUSS-MAFFEI CORPORATION                                                 PLAINTIFF

v.                  **MEMORANDUM OPINION AND ORDER**

KLAUS LEPP, et al.                                                       DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendants Gunther Hoyt and Gunther Hoyt Associates, LLC ("the Hoyt Defendants")'s Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. # 67). Plaintiff Krauss-Maffei Corporation ("Krauss-Maffei") has filed a Response (Doc. # 68), and the Hoyt Defendants have filed a Reply (Doc. # 69). The Motion has been fully briefed and is now ripe for this Court's review. For the reasons stated herein, the Hoyt Defendants' Motion to Dismiss (Doc. # 67) is **granted**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Krauss-Maffei is a manufacturer of machines and systems for producing plastics and rubber. (Doc. # 1 at ¶ 10). In September 2022, Krauss-Maffei filed the instant suit alleging that Defendant Klaus Lepp, while still its employee, conspired with his wife, Defendant Marcela Lepp, to steal Krauss-Maffei's trade secrets and confidential information using Defendant Plast Pro's, LLC ("Plast Pro's") as an alter ego. (Doc. # 1 at ¶ 19, 24, 25). During discovery, Krauss-Maffei obtained information that it believed demonstrated the involvement of other parties in the claims asserted in the Complaint,

1

and sought to file an amended complaint that included the Hoyt Defendants and IM Plast Source, LLC. (Doc. # 42 at 3). The Court granted the Motion to Amend, and the Amended Complaint was filed on the docket. (Docs. # 53 and 54).

In the Verified Amended Complaint, Kraus-Maffei alleges counts of misappropriation of trade secrets, breach of fiduciary duty and employee duty of loyalty, fraud, violation of the Lanham Act, and conversion. (*Id.* at ¶ 53-94). Specifically with respect to the Hoyt Defendants, Krauss-Maffei alleges misappropriation of trade secrets, violation of the Lanham Act, and conversion. (*Id.* at ¶ 53-58, 77-94). Krauss-Maffei alleges that Mr. Hoyt, representing Gunther Hoyt Associates, LLC, "served as a middleman to sales made by Mr. Lepp in which clients were deceived by fraudulent trademarks and branding into erroneously believing they were purchasing Krauss-Maffei products." (*Id.* at ¶ 38). With respect to personal jurisdiction over the Hoyt Defendants, Krauss-Maffei only alleges that the Court "has specific personal jurisdiction over all Defendants because each Defendant has directed tortious acts at Krauss-Maffei, a resident of Kentucky." (Doc. # 54 at ¶ 10).

After filing the Verified Amended Complaint, the Hoyt Defendants filed an Answer, asserting as a defense that the Court lacks personal jurisdiction pursuant to K.R.S. § 454.210 and the United States Constitution. (Doc. # 64 at ¶ 120). Roughly a month later, the Hoyt Defendants filed the instant Motion to Dismiss, reiterating their position that Krauss-Maffei fails to allege in the Amended Complaint "any facts sufficient to establish personal jurisdiction" and that the Hoyt Defendants "have no ties or connections of any kind to the Commonwealth of Kentucky." (Doc. # 67 at 1).

2

Krauss-Maffei filed a Response in Opposition, arguing that the Court has personal jurisdiction over the Hoyt Defendants because they directed business solicitations to Krauss-Maffei and committed and profited off of the alleged tortious conduct towards Krauss-Maffei. (Doc. # 68 at 1-2). The Hoyt Defendants then filed a Reply (Doc. # 69), arguing that the exhibits included by Krauss-Maffei in its Response do not demonstrate sufficient contacts between the Hoyt Defendants and the Commonwealth of Kentucky to establish personal jurisdiction. The Court will consider the arguments herein.

## II.  ANALYSIS

### A.  Standard of Review

When a defendant brings a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to establish that the court has personal jurisdiction over each defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court has not conducted an evidentiary hearing, then the plaintiff's burden is "relatively slight," and the plaintiff must only make a prima facie showing of personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the Hoyt Defendants] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987)). The court views the pleadings, affidavits, and additional evidence in the light most favorable to the plaintiff and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459.

If the defendant, however, submits "a properly supported motion for dismissal, [then] the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458; *see also Parker v. Winwood*, 938 F.3d 833, 839-40 (6th Cir. 2019); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012); *Carrier Corp. v. Outokumpu Oyi*, 673 F.3d 430, 449 (6th Cir. 2012). In the face of "affirmative evidence showing that the court lack[s] jurisdiction," the plaintiff's "mere allegations of jurisdiction are not enough." Parker, 938 F.2d at 839-40. If the plaintiff fails to put forth specific facts in opposition of a properly-supported motion to dismiss for lack of personal jurisdiction, then the court will "find personal jurisdiction lacking unless there are sufficient allegations in the complaint to establish personal jurisdiction which *stand unrefuted* by the sworn evidence provided" by the defendant. *Babcock Power, Inc. v. Sterling Grp., LP.*, No. 3:16-cv-789-CRS, 2017 WL 3161624, at *2 (W.D. Ky. July 25, 2017) (emphasis added).

A federal court sitting in diversity must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements.[1] *Air Prods. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Kentucky requires that personal jurisdiction be proper under both the Kentucky long-arm statute and the federal Due Process Clause. *See id.* "The Kentucky Supreme Court has held that the state's long-arm statute (K.R.S. § 454.210) does not reach the outer limits of the Due Process Clause." *Hall v. Rag- O- Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. Jan. 8, 2019) (citing *Caesars Riverboat*

---

[1] This Court is sitting in diversity as Plaintiff Krauss-Maffei is incorporated in Delaware with a principal place of business in Kentucky and alleges that the amount in controversy is more than $75,000. (Doc. # 54 at ¶¶ 1, 8); *see* 28 U.S.C. § 1332(a). The Hoyt Defendants are citizens of Virginia. (*Id.* at ¶ 6-7).

4

*Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)).

Therefore, analysis of personal jurisdiction under Kentucky law is a "two-step process." *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015) (citing *Caesars Riverboat Casino*, 336 S.W.3d at 57). "First, a court must look to see if the cause of action arises from the type of conduct or activity that is enumerated in the [Kentucky long-arm] statute itself." *Id.* If there is jurisdiction under the long-arm statute, "then the court must assess whether 'exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.'" *Id.*

### B.  Kentucky Long-Arm Statute

The Kentucky long-arm statute provides nine categories of conduct which may subject a defendant to personal jurisdiction in a Kentucky court. K.R.S. § 454.210. A person is subject to the Kentucky long-arm statute whether he "acts directly or by an agent, as to a claim arising from" the enumerated conduct in order for personal jurisdiction to lie. *Id.* at § 454.210(2)(a). "A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." *Holbrook v. Mazda Motor Corp.*, 6:17-cv-244-DCR, 2018 WL 1571905, at *2 (E.D. Ky. Mar. 30, 2018) (citing *Caesars Riverboat Casino*, 336 S.W.3d at 57). Courts "ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction," when determining whether the plaintiff's claims arise from the defendant's actions. *Caesars Riverboat Casino*, 336 S.W.3d at 59.

Krauss-Maffei argues three subsections of K.R.S § 454.210 are applicable to the facts at hand: the Hoyt Defendants were (1) transacting business in the Commonwealth; (2) contracting to supply services or goods in the Commonwealth; and (4) caused a

5

tortious injury in Kentucky by an act or omission outside of Kentucky (applicable if the party "does or solicits business," or "derives substantial revenue" from goods used or services rendered in Kentucky."). (Doc. # 68 at 3) (citing K.R.S § 454.210(1),(2), and (4)).

Krauss-Maffei argues that the Hoyt Defendants transacted business and caused tortious injury in the Commonwealth by (1) attending a meeting with a Krauss-Maffei representative in Florence, Kentucky in 2015 and Germany in 2022; (2) soliciting business from Krauss-Maffei on behalf of a Plastics Industry Association ("PIA") convention, where Hoyt sells booth space to plastics companies; (3) sending emails soliciting business to Krauss-Maffei; and (4) receiving more than $800,000 in checks from Plast Pro's in connection with their tortious conduct. (Doc. # 68 at 2, 5, 7-8). Krauss-Maffei attaches exhibits to its Response that allegedly indicate evidence of the Hoyt Defendants' conduct. (Doc. 68-1 at 1-20).  The exhibits include an affidavit from Krauss-Maffei's President, Nolan Strall, and certain emails that Krauss-Maffei argues show that the Hoyt Defendants were soliciting business and participating in the tortious acts against them. (*Id.*). Krauss-Maffei also includes a copy of the invoice the Hoyt Defendants sent on behalf of the booth space for a PIA convention, and a follow up email that Strall sent Hoyt after meeting him at a convention in Germany. (*Id.*).  Finally, Krauss-Maffei includes images of the checks written by Defendant Plast Pro's to Defendant Gunther Hoyt Associates, LLC. (Doc. # 68-2 at 1-48).

There is no agreed-upon interpretation of what it means to "transact any business" in Kentucky under the long-arm statute. *See Hall*, 359 F. Supp. 3d at 505-06 (collecting cases). Nevertheless, federal courts in Kentucky have employed several different approaches.  First, courts have relied on the plain meaning of "transacting business."

6

"Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct (negotiations, business, etc.) to a conclusion.'" *Childress Cattle, LLC v. Cain*, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017) (quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017)). Other Kentucky district courts ask whether there has been "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Gentry v. Mead*, No. 16-cv-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015)). This Court has found the "transacting business" prong satisfied when the defendant had sent emails to a Kentucky resident, knowing he was in Kentucky, and asked him to "send samples and instructions for his products, which the [the plaintiff] fulfilled from Kentucky." *Eat More Wings, LLC v. Home Market Foods, Inc.*, 282 F. Supp. 3d. 965, 970 (E.D. Ky. 2017).

With respect to subsection (4) of the statute, the Court has personal jurisdiction over a person acting directly or by an agent to cause a tortious injury in Kentucky by an act or omission outside of Kentucky, if the party "does or solicits business," or "derives substantial revenue from goods used or services rendered in Kentucky." K.R.S § 454.210(a)(4). In other words, even if a party commits a tortious injury outside of the state, the Court only has personal jurisdiction over the party if they also transact business in the Commonwealth or make a profit from goods or services provided in Kentucky.

In addition to these subdivisions, the Kentucky long-arm statute also requires the claim to arise from the conduct, meaning Krauss-Maffei must show a "reasonable and direct nexus" between the conduct causing injury and the Hoyt Defendants' activities in

7

Kentucky. *See* K.R.S. § 454.210(2)(a); *Holbrook*, 2018 WL 1571905, at *2. Because each subdivision of the Kentucky long-arm statute requires evidence of some business or solicitation, the Court will first evaluate whether any of the contacts argued by Krauss-Maffei are business transactions sufficient to establish personal jurisdiction over the Hoyt Defendants, and if so, whether the claims brought by Krauss-Maffei arise from that conduct.

### 1. In-Person Meetings

Krauss-Maffei argues that two in-person meetings between representatives of Krauss-Maffei and the Hoyt Defendants subject the Hoyt Defendants to personal jurisdiction. Specifically, Krauss-Maffei points to two meetings with Gunther Hoyt: a 2015 meeting with Matt Sieverding, a Krauss-Maffei employee, in Florence, Kentucky and a 2022 meeting with Krauss-Maffei's President, Nolan Strall, at a plastic convention in Dusseldorf, Germany. (Doc. # 68 at 5, 6).

With respect to the meeting in Florence, Kentucky, Hoyt stated in his affidavit in the initial Motion that this was the only time he remembered "being physically present" in the Commonwealth. (Doc. # 67-2 at 3). He stated that while he was on business in Batavia, Ohio, he traveled to Florence to introduce the president of Reiloy Metal (a German-based machinery company) to Matt Sieverding, who was in charge of one of Krauss-Maffei's divisions. (*Id.*). He states that this meeting had nothing to do with the claims raised by Krauss-Maffei or any of the other defendants in this action. (*Id.*). In its Response, Krauss-Maffei claims that this meeting is evidence that Hoyt "entered Kentucky to do business with a Krauss-Maffei employee." (Doc. # 68 at 5). In Strall's Declaration, he simply states that "it is [his] understanding that in 2015," this meeting

8

occurred. (Doc. # 68-1). Though Krauss-Maffei has the burden to show "by affidavit, or otherwise . . . specific facts showing that the court has jurisdiction," *Theunissen*, 935 F.2d at 1458, Krauss-Maffei does not provide any additional context for the meeting, or conflicting facts from Hoyt's assertions that he was not there to transact business with Krauss-Maffei.

With respect to the meeting in Germany, Krauss-Maffei notes that Hoyt and Mr. Strall were introduced at a plastics convention called "K Fair," and the meeting was "designed as both an in-person introduction and to encourage Krauss-Maffei's attendance at NPE [a plastics convention] and Booth Selection for NPE 2024." (Doc. # 68 at 6). Krauss-Maffei also states that Hoyt made comments about the pending lawsuit, and exchanged an email with Strall following the meeting. (*Id.*). The attachment is an email from Strall to Hoyt stating that it was good to meet with him at the show in Germany, and sharing his contact information "if there is anything [they] need to discuss regarding NPE, PIA, or other topics." (Doc. # 68-1 at 16). The attachment also shows Hoyt's response, thanking Strall for the email and noting he will be in touch after he returns from Germany. (*Id.*). In the Reply, the Hoyt Defendants clarify that this meeting in Germany "involved absolutely no business transaction between the Hoyt Defendants and Krauss-Maffei in Kentucky and was centered on a conversation about NPE 2024 in Orlando, Florida, from which the Hoyt Defendants stood to gain no financial benefit." (Doc. # 69 at 3).

Even if these meetings were evidence of the Hoyt Defendants transacting business or attempting to solicit business in Kentucky, the Court fails to see a "reasonable and direct nexus" between the conduct causing injury and the Hoyt Defendants' activities in Kentucky, especially when the Germany meeting was after the lawsuit had already been

9

filed. See K.R.S. § 454.210(2)(a); *Holbrook*, 2018 WL 1571905, at *2. Viewing these meetings through a common sense lens, the Court declines to find that these meetings establish that the Court has personal jurisdiction over the Hoyt Defendants. *See Caesars Riverboat Casino*, 336 S.W.3d at 59.

### 2. PIA Convention Booth Solicitation

Krauss-Maffei also argues that Hoyt solicited business in Kentucky by selling booth space and encouraging attendance at the NPE convention, organized by PIA. (Doc. # 68 at 5). Even if selling booth space for an unrelated association was evidence of the Hoyt Defendants' attempt to solicit business in Kentucky, the Court fails to see the "reasonable and direct nexus" between Hoyt assisting PIA in booking vendors for its conventions and the conduct alleged by Krauss-Maffei in this action. *Holbrook*, 2018 WL 1571905, at *2. As such, it does not establish that the Court has personal jurisdiction over the Hoyt Defendants.

### 3. Emails

Turning to the emails provided by Krauss-Maffei, the Hoyt Defendants dispute that the emails demonstrate that they transacted business in Kentucky. (Doc. # 69 at 2). In the first e-mail dated June 7, 2021, neither Hoyt Defendant is present anywhere in the email chain and neither Hoyt Defendant is mentioned whatsoever. (Doc. # 68-1 at 7-9). In the next email dated June 7, 2021, Klauss Lepp addressed an email to Hoyt with the subject "FW: Rehrig Pacific PO 80958 Q2 for KM Machine BOM Quote 26231307 machine 60017290." (*Id.* at 10). The only content in the email is a chart that appears to be pricing for various equipment, but no further explanation is included. (*Id.*). The next email, dated June 15, 2021, also does not include the Hoyt Defendants. (*Id.* at 11). The

final email, dated June 13, 2021, is another email from Klaus Lepp to Hoyt, forwarding a price quote from Hoyt that Lepp sent to someone else. (*Id.* at 12). A price quote for five products is attached, addressed from Gunther Hoyt Associates, LLC to Lepp at Krauss-Maffei. (*Id.* at 14). The five parts, whose identification numbers appear to be some of the same ones in the charts in the other emails, include a price and delivery estimate. (*Id.*). Krauss-Maffei does not provide additional context for this quote, simply stating that Hoyt quoted prices for certain parts that he was offering to sell to Krauss-Maffei. (Doc. # 68 at 5). The Hoyt Defendants dispute this characterization, citing to Hoyt's affidavit where Hoyt states that because he and Gunther Hoyt Associates, LLC were not approved vendors for Krauss-Maffei, "there was no expectation for us to sell or deliver the parts for which quotes were requested." (Doc. # 69-1 at ¶ 8). He adds that "the information was solicited by Krauss-Maffei with no intent of consummating a sale transaction by either party and was designed merely to provide Krauss-Maffei with comparable pricing and delivery information . . . No business was transacted, and no goods or services were provided by [the Hoyt Defendants] with, to or for Krauss-Maffei." (*Id.*).

Even though the Kentucky long-arm statute provides for personal jurisdiction when a defendant causes a tortious injury in Kentucky by an act or omission outside of Kentucky, the party must also conduct or solicit business, or derive substantial revenue from the goods or services used in Kentucky. K.R.S § 454.210(a)(4). In other words, Krauss-Maffei must show more than the Hoyt Defendants committed a tort against them, but also that the Hoyt Defendants were regularly doing or soliciting business in Kentucky while it happened. None of the emails here indicate that Hoyt was soliciting business in Kentucky, because the Hoyt Defendants are not the authors of any of these emails and

11

the quote provided was not a solicitation of business. *See Cty. of Pikeville v. Cebridge Acquisition, LLC*, No. 22-cv-64-DLB-CJS, 2023 WL 5251814, at *3 (E.D. Ky. Aug. 15, 2023) ("Only when a business transaction has been proven does the 'any' analysis come into play. It is not enough that something happened in Kentucky. The action must be a transaction of business."). Notably, Krauss-Maffei provides the affidavit of Nolan Strall, who was not included in any of the emails or the quote, and the Hoyt Defendants have provided sworn evidence that refutes Krauss-Maffei's claims regarding the solicitation of business and the quote. *See Babcock Power, Inc.*, 2017 WL 3161624, at *2 ("the court will find personal jurisdiction lacking unless there are sufficient allegations in the complaint to establish personal jurisdiction which *stand unrefuted* by the sworn evidence provided").

Krauss-Maffei adds that there were over thirty emails between Hoyt and Lepp that discuss "internal Krauss-Maffei operations, pictures of products, technical drawings, and requests for assistance fulfilling orders on behalf of Krauss-Maffei" but that they were not included in this Response "because they were in German and contain confidential information." (Doc. # 68 at 7, n.1). This is not persuasive, because Krauss-Maffei bears the burden to show "by affidavit, or otherwise . . . specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458.

Krauss-Maffei relies on *Hall*'s holding that a defendant sending emails to the plaintiff establishes "transacting any business" for personal jurisdiction, but in *Hall*, the emails involved the negotiation and execution of a business contract. *See Hall*, 359 F. Supp. 3d at 506. Krauss-Maffei has not demonstrated communications of that nature here. Krauss-Maffei has the burden to show "by affidavit, or otherwise . . . specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. It has failed to

12

do so because the emails currently before the Court do not demonstrate that the Court has personal jurisdiction over the Hoyt Defendants.

### 4. Checks from Plast Pro's to Hoyt Defendants

Finally, Krauss-Maffei attaches copies of checks written from Plast Pro's to Gunther Hoyt Associates, LLC to establish personal jurisdiction. (Doc. # 68-2). Krauss-Maffei states that these checks are the payments that the Hoyt Defendants received from Lepp's involvement in the scheme to acquire Krauss-Maffei's trade secrets. (Doc. # 68 at 7). Krauss-Maffei argues that these checks establish that the Court has personal jurisdiction over the Hoyt Defendants because of their alleged tortious conduct affecting Krauss-Maffei in Kentucky. The checks are made out from Plast Pro's, a Florida-based LLC, to Gunther Hoyt Associates, a Virginia-based LLC (*id.*), but the affidavit of Krauss-Maffei president, Nolan Strall, does not mention the checks. (Doc. # 68-1). Krauss-Maffei argues that the Hoyt Defendants "have been paid more than $800,000 for their work with Mr. Lepp and the other Co-Defendants in furtherance of the scheme described in Krauss-Maffei's pleadings." (Doc. # 68 at 7). However, even when taking this statement as true, when the act that caused the alleged tortious injury of a plaintiff does not occur in Kentucky, "regular solicitation or conduct of business in Kentucky . . . is also necessary." *Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655, 659 (W.D. Ky. 2007) (quoting *Powers*, 192 S.W.3d at 443). Checks between two out-of-state LLCs are not evidence of such regular solicitation or business conduct, and as noted above, the other "contacts" between the Hoyt Defendants and Kentucky are not enough to establish personal jurisdiction on this basis.

As demonstrated through the analysis above, the Hoyt Defendants' contacts "are insufficient to put them within the class of out-of-state actors susceptible to personal jurisdiction under Kentucky long-arm statute." *Id.* at 659. And because Krauss-Maffei cannot show that the Court has personal jurisdiction over the Hoyt Defendants via the Kentucky long-arm statute, the Court need not determine whether the exercise of personal jurisdiction over the Hoyt Defendants "would offend federal due process standards." *Caesars Riverboat Casino*, 336 S.W.3d at 59.

### C. Limited Discovery

Krauss-Maffei finally argues that if it was unable to establish that the Court has personal jurisdiction over the Hoyt Defendants, the Court should instead permit for limited discovery on the issue. (Doc. # 68 at 8). Courts can allow limited discovery "[w]hen the filings suggest a disputed issue of fact." *Antony v. Disney Enterprises, Inc.*, No. 18-cv-205-DLB-CJS, 2019 WL 5866586, at *2 (E.D. Ky. Aug. 20, 2019). Krauss-Maffei points to *Sherwood v. Cook Out, Inc.* as an example of this Court granting limited discovery for personal jurisdiction purposes despite "thin" evidence of the party's connection to Kentucky. (Doc. # 68 at 8) (citing No. 16-cv-JMH, 2017 WL 1173936 (E.D. Ky. Mar. 29, 2017)). In that case, the plaintiff had provided news articles and features of the restaurant's website demonstrating that it was operating in Kentucky, but the way that the restaurants were incorporated led to questions about whether the specific defendant had significant enough contacts for the Court to find personal jurisdiction. *Sherwood*, 2017 WL 1173936, at *1. Here, even when viewing Krauss-Maffei's submissions in the most favorable light, there is no dispute of fact like in *Sherwood* that would warrant further discovery. *See also Drexel Chemical Co. v. SGS Depauw & Stokoe*, No. 94-5564, 1995

WL 376722, at *2 (6th Cir. June 22, 1995) (remanding to the district court where the submission of the parties showed a dispute of fact regarding cross-corporate entanglements).

While Krauss-Maffei points to e-mails and meetings between Krauss-Maffei representatives and the Hoyt Defendants, it does not identify conflicting facts from those provided by the Hoyt Defendants. The Hoyt Defendants provide additional context to Krauss-Maffei's claims that include first-person accounts that Krauss-Maffei does not, like the purposes behind the 2015 meeting in Florence, Kentucky and Lepp's solicitation of the pricing estimate from the Hoyt Defendants. (Doc. # 67-2 at 3; Doc. # 69-1 at ¶ 8). This is not evidence of a factual dispute that would require additional discovery.

Finally, it should be noted that this is not a brand new case where Krauss-Maffei has had no opportunity to uncover information about the Hoyt Defendants' contacts. Krauss-Maffei filed this action in September 2022 (Doc. # 1), and amended the Complaint to include the Hoyt Defendants in April 2023 after conducting some discovery with the other Defendants (Doc. # 42). The initial discovery included subpoenas to third parties and written discovery and document production that Krauss-Maffei believed implicated the Hoyt Defendants. (Doc. # 43 at 3). The Court fails to see how allowing limited discovery would produce additional evidence of personal jurisdiction over the Hoyt Defendants, when Krauss-Maffei is unable to show a dispute of fact with the volume of information they have already provided.

### III. CONCLUSION

Accordingly, as Krauss-Maffei has not adequately demonstrated that the Court has personal jurisdiction over the Hoyt Defendants, and for the reasons set forth herein,

**IT IS ORDERED** that:

(1) The Hoyt Defendants' Motion to Dismiss (Doc. # 67) is **GRANTED**; and

(2) All claims against Defendants Gunther Hoyt and Gunther Hoyt Associates, LLC, are dismissed as parties for lack of personal jurisdiction.

This 13th day of December, 2023.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2022\22-117 MOO on MTD for PJ.docx